THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALFORD JOHNSON, Defendant-Appellant.

First District (1st Division)   No. 1—88—0107

Opinion filed September 9, 1991.

Randolph N. Stone, Public Defender, of Chicago (Peter Tokatlian, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Guy L. Miller IV, Assistant State's Attorney, of counsel), for the People.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Following a jury trial, defendant Alford Johnson was found guilty of attempted murder (Ill. Rev. Stat. 1987, ch. 38, pars. 8—4(a), 9—1(a)) and sentenced to an extended-term sentence of 55 years' imprisonment. On appeal, defendant contends that this court should reverse and remand his conviction and raises the following issues: (1) whether the trial court's denial of defendant's tendered instruction on aggravated battery constitutes reversible error; (2) whether remarks made by the prosecutor during the rebuttal closing argument were so inflammatory and prejudicial as to deny defendant's right to a fair and impartial trial; and (3) whether the trial court improperly allowed introduction of other crimes evidence.

We affirm.

Defendant originally was charged by indictment with unlawful use of a weapon by a felon, two counts of aggravated battery, armed vio-

lence and attempted murder. Prior to trial, the State decided not to prosecute any of the counts except the attempted murder count.

Faye Gibson testified that on February 8, 1987, between 10 p.m. and 10:30 p.m. in the vicinity of 64th and Sangamon she and her sister Sherry were walking down the street following a trip to the grocery store when she heard someone running behind her. Each of the sisters was carrying a bag of groceries, and as they stepped aside to allow the person to pass, the man said "Bitch, this is a stickup," and stabbed Faye in the back with a knife. Faye fell to the ground and tried to block her face as she fought the assailant when he attempted to stab her in the face with the butcher knife. When Faye and Sherry began "hollering" for help, the assailant fled through the gangway. Although Faye was unable to identify the assailant's face, later that evening after receiving medical attention at the hospital and four stitches for the wound to her back, she identified defendant at a police lineup from the clothing he was wearing, to wit: ski jacket, boots and pants. Faye also made an in-court identification of defendant.

Sherry Gibson testified similarly and stated that she saw defendant stab her sister in the back with a butcher knife. Sherry testified that at the time of the incident defendant wore beige boots, jeans and a blue jacket with fur on the hood. Later that evening, Sherry identified defendant as her assailant in a police lineup and identified him, the items of clothing and the knife used in the attack in open court.

Over defense objections, the State introduced evidence of another incident which occurred immediately prior to the attack on Faye Gibson. At trial, Lauren Adams testified that shortly before 10 p.m. on the evening in question, while she and Cynthia Ruff were walking in the vicinity of 64th and Peoria, they heard someone run toward them from behind and moved aside to let the person pass. The man, whom Lauren identified later that night while he sat in a police car and in open-court as the defendant, came to a halt between the two women, grabbed Cynthia by the face and said something that Lauren was unable to hear. During this time, Lauren observed that defendant "had on a blue coat with a fur hood and a plaid scarf pulled over his face. He had on some blue jeans and some light-colored boots, beige or something." Lauren also noticed that defendant held a butcher knife in his hand. When Cynthia was able to free herself, she began to run west and defendant chased her about a half-block, then stopped, turned around and came toward Lauren. As he chased Lauren around a car, defendant repeated three times that he "was going to kill her." As Lauren ran toward Cynthia with defendant in pursuit, they saw a little boy with a dog. Lauren stated that at this time defendant's "scarf fell down off his face and

[Lauren] noticed he had a large scar on his face." Defendant then stopped chasing Lauren and "ran in the parking lot of that church."

Cynthia testified similarly and related that after the incident, the women ran to a friend's house and called the police, who arrived very quickly. Lauren and Cynthia gave the police a detailed description of the assailant, and within 5 or 10 minutes, the police returned and asked them to identify a man seated in the back of the squad car. Both women identified the defendant as their assailant that evening and in court. They also identified the knife and his clothing.

Officer Halloran testified that after arriving at the scene at 10:20 p.m. and speaking to Lauren and Cynthia, he toured the area and within minutes observed defendant as he walked down the street near 63rd and Morgan, a block away from the women. He saw defendant throw a large butcher knife on the ground before attempting to flee. Officer Halloran apprehended defendant and the knife, which was later inventoried and sent to the crime lab with other items belonging to defendant. The officer then placed defendant into the unmarked squad car and drove him to Cynthia and Lauren, both of whom identified him as their assailant. Defendant was then transported to the police station and placed in a lineup where Sherry Gibson identified him as her sister's assailant. Officer Halloran also testified that the attack on the Gibson sisters took place near 63rd and Racine and the incident which involved Lauren and Cynthia occurred about 15 minutes earlier and "four to six blocks away," near 64th and Peoria.

A serologist testified that she conducted tests on the blood found on defendant's clothing and weapons and blood samples from defendant and Faye. Her examination of the knife recovered from defendant revealed only the presence of the type of blood that Faye had, such type being different from that of the defendant; but, her test results on defendant's clothing were inconclusive. Defendant's motion for a directed verdict was denied by the trial court.

During the defense, Anthony O'Banner testified that on the evening in question, he was at the defendant's house with defendant, defendant's girlfriend Gwen and his friend Dineen watching VCR movies on television. He stated that defendant was in the house between 9:30 p.m. and 10:30 p.m. and left around 10:30 p.m. Anthony recalled that Al (defendant) had on a blue coat and blue jeans, but did not know where defendant was going when he left the house or whether he had a knife.

Gwendolyn McCollum (Gwen) testified that at the time of the incident defendant lived with her and their children at 1120 West 65th Street. That evening, she was hungry and asked defendant to get her a submarine sandwich from the shop at 63rd and Racine. Defendant said

"okay," and before he left the house, got his jacket and a "kitchen knife." On cross-examination, Gwen stated that defendant put the knife in his jacket pocket. Gwen identified the boots, jacket, jeans and knife as the items that defendant had on him when he left home and also stated that she did not notice any bloodstains at that time. The defense rested.

Thereafter, the trial court held an instruction conference where defense counsel tendered a jury instruction, based upon Illinois Pattern Jury Instructions Nos. 11.07 and 11.09 on aggravated battery, which provides:

> "A person commits the offense of aggravated battery when, in committing a battery, uses a deadly weapon [or] intentionally or knowingly causes great bodily harm to the person harmed."

(See Illinois Pattern Jury Instructions, Criminal, No. 11.09 (2d ed. 1981).) Following argument by both counsel, the trial court rejected the instruction. The parties then proceeded to closing argument, where the prosecutor called defendant several names and stuck the knife into the podium. When defense counsel objected to this conduct and remarks, the court sustained the objections and admonished the jury to disregard them.

The jury found defendant guilty of attempted murder, and the court denied his motion for a new trial. Following the hearing in mitigation and aggravation, in which the State requested an extended term sentence of 60 years based upon the defendant's criminal background, the trial court found that defendant had committed an offense which was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty and sentenced him to an extended-term sentence of 55 years in the Illinois penitentiary.

Defendant's first contention on appeal is that the trial court erred in rejecting his tendered jury instruction on aggravated battery because, based upon the evidence, however slight, presented at trial, the jury could have convicted him of the lesser offense of aggravated battery, rather than the greater offense of attempted murder. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 394 N.E.2d 52.) He asserts that the record here indicates that the less serious offense has a broad foundation in the indictment charging the greater offense. *People v. Bryant* (1986), 113 Ill. 2d 497, 499 N.E.2d 413.

It is well established that a defendant may be entitled to have the jury instructed on a less serious charge that is included in the one he is charged with (*Beck v. Alabama* (1980), 447 U.S. 625, 636-37, 65 L. Ed. 2d 392, 400-02, 100 S. Ct. 2382, 2388-89), and that aggravated battery is a lesser included offense of attempted murder. (*People v. Jenkins* (1976), 41 Ill. App. 3d 392, 354 N.E.2d 139.) However, conviction for the crime

of attempted murder requires a finding that defendant specifically intended to kill the victim, while aggravated battery requires no specific intent. (*People v. Hancock* (1980), 83 Ill. App. 3d 700, 704, 404 N.E.2d 914.) It is the function of the trier of fact to determine the existence of the requisite intent to kill necessary for a conviction of attempted murder, and that determination will not be disturbed on review unless there exists a reasonable doubt as to defendant's guilt. (*People v. Myers* (1980), 83 Ill. App. 3d 1073, 404 N.E.2d 1082, *aff'd in part, rev'd in part on other grounds* (1981), 85 Ill. 2d 281, 426 N.E.2d 535.) Moreover, the specific intent to kill, a state of mind, may be shown by circumstances. See *People v. Barker* (1980), 83 Ill. 2d 319, 415 N.E.2d 404.

In the present case, the State asserts that defendant fails to raise a reasonable doubt argument on appeal and that an instruction on the lesser included offense of aggravated battery was unnecessary since defendant's alibi witnesses and his theory urged that he was not guilty of any crime whatsoever. *People v. Thompson* (1976), 35 Ill. App. 3d 773, 342 N.E.2d 445.

■ We have reviewed the record below and believe that the jury could have concluded from the testimony and exhibits presented at trial that defendant had the requisite intent and did all that was necessary to kill Faye by running up behind the women, stabbing Faye in the back with a large butcher knife and by attempting to stab her again after she fell to the ground. The evidence demonstrates that defendant left his home with a large butcher knife, a flashlight and rope. Following an attack on Lauren and Cynthia, where fortunately no one was harmed, defendant immediately proceeded to attack two more women a few blocks away. Three witnesses positively identified defendant prior to trial and in open court. The victim accurately described the clothing her assailant wore and the weapon he used to stab her during the incident. The arresting officer was given a description of the assailant only minutes after both incidents occurred. He immediately apprehended defendant, who paralleled the description, only a few blocks away. Defendant's own alibi witnesses testified that he was dressed in the manner described by the State's witnesses on the night in question. His girlfriend Gwen stated that he took the flashlight and knife with him when he left the house and that she cautioned him not to get into anything. She identified these items in court. The only discrepancy here involves the time defendant allegedly was in the vicinity of the incidents. Anthony recalled that defendant was at home at the time in question because he (Anthony) saw the time on the VCR. Although there was testimony given by defense witnesses that the VCR was picked up recently from someone's home, there was no evidence that the time or clock on the

VCR was accurate, that it had been properly programmed or that it was in working order. Additionally, the same witness who testified as to the time defendant left the house could not recall the address of defendant's house.

On the other hand, the testimony of the women placed defendant at the incidents between 9:45 p.m. and 10:30 p.m. carrying a butcher knife with a dark handle and a 12-inch blade. Furthermore, the arresting officer testified that he arrived at the scene to investigate the call received from Lauren and Cynthia at 10:20 p.m. and apprehended defendant only minutes later as he walked down the street in the vicinity of the incidents. Thus, any discrepancies in the evidence are a matter of the credibility of the witnesses that is properly within the province of the trier of fact.

Moreover, according to *Bratcher* (63 Ill. 2d 534, 394 N.E.2d 52), the defendant has to present some evidence of an affirmative defense unless the State's evidence raises the issue. We do not find that here. The defendant didn't testify. He stabbed the victim in the back in an unprovoked attack and tried to stab her in the face. *Bryant* (113 Ill. 2d 497, 499 N.E.2d 413) is distinguishable on its facts. The *raison d'etre* of a lesser included offense instruction is that it gives a third option to a juror who, believing the defendant was guilty of something, but uncertain whether the charged offense has been proved, might otherwise convict rather than acquit the defendant of the greater offense. Accord *Beck v. Alabama* (1980), 447 U.S. 625, 65 L. Ed. 2d 392, 100 S. Ct. 2382.

Accordingly, we find no error in the trial court's refusal of the tendered instruction on aggravated battery. Moreover, because the jury, in considering all the facts and circumstances surrounding the offense in determining the question of intent (*People v. Cabrera* (1987), 116 Ill. 2d 474, 492, 508 N.E.2d 708), found that defendant had the requisite intent to kill, we will not disturb its determination on review. Accord *People v. Tyler* (1989), 188 Ill. App. 3d 547, 544 N.E.2d 1077.

Defendant next contends that certain actions and remarks made by the prosecutor during closing argument were highly inflammatory and deprived him of a fair trial, to wit: the prosecutor's action of sticking the knife into the podium and calling the defendant the names of "Scarface," "sociopath," and "slasher." Additionally, defendant urges that the prosecutor improperly injected his own view that the victim was traumatized for life when he stated: "I think that [the attack] is something that you don't forget." Defendant also asserts as error by the State: (1) the prosecutor's characterization of Racine Avenue "as a high-crime neighborhood because of animals like this [defendant] that run around

with butcher knives"; (2) the prosecutor's characterization of defendant as a one-man crime wave when he remarked: "You [the jury] have a chance to restore Racine Avenue to a low-crime neighborhood because he is building the statistics up there daily with his attacks on women"; and (3) the prosecutor's comment: "If you [the jury] believe all that garbage that his [defendant's] witnesses put up here, let him go. I will give him [defendant] his knifes back."

Initially, the State asserts that defendant has failed to preserve this issue on appeal because he did not object to the impropriety of the closing argument at trial and in a written post-trial motion. (*People v. Richardson* (1988), 123 Ill. 2d 322, 528 N.E.2d 612.) However, our review of the record reflects that the defendant properly objected to the complained-of conduct and comments at trial and alleged as error either the substance of the comments or the general basis for his objection in the written post-trial motion. Thus, we will address this issue on appeal, since objection to the alleged prosecutorial misconduct was brought to the attention of the trial court and appears in the record.

In determining whether defendant has been denied his right to a fair and impartial trial in cases of alleged prosecutorial misconduct, the reviewing court's focus is whether the trial court has abused its discretion in determining the prejudicial effect, if any, of a remark made during closing argument. (*People v. Holloway* (1983), 119 Ill. App. 3d 1014, 1021-22, 457 N.E.2d 466.) Unless a clear abuse of discretion is shown, the trial court's ruling should be upheld. *People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324.

It is well established that a prosecutor: (1) may comment on the evidence presented at trial and draw any legal inferences therefrom, even if the inferences are unfavorable to defendant (see *People v. Marshall* (1988), 165 Ill. App. 3d 968, 521 N.E.2d 538); (2) may dwell upon the evil results of the crime and urge a fearless administration of the law (*People v. Provo* (1951), 409 Ill. 63, 70, 97 N.E.2d 802; see also *People v. Horne* (1984), 129 Ill. App. 3d 1066, 1072, 473 N.E.2d 465); and (3) may comment on the strength and quality of the evidence presented, even if such comment refers to defendant's account of what transpired as "garbage." (See *People v. Jennings* (1986), 142 Ill. App. 3d 1014, 1022, 492 N.E.2d 600.) Neither may a defendant claim prejudice from comments made by the prosecutor which were invited responses to defendant's arguments (*People v. Richardson*, 123 Ill. 2d at 356), where, as here, defendant continually emphasized that defendant had a scar on his face.

Moreover, the mere occurrence of what may constitute improper remarks does not mandate reversal (see *People v. Thomas* (1990), 137 Ill. 2d 500, 561 N.E.2d 57), especially where defense counsel makes a timely

objection, coupled with the trial court's sustaining of the objection and appropriate admonition to the jury. The rationale underlying this principle is that the error is obviated or rendered harmless when the trial court sustains defendant's objections and properly admonishes the jury. The court has held that to mandate a reversal, defendant must show that the remarks resulted in substantial prejudice and that they constituted a material factor in the conviction. *People v. Bracey* (1981), 93 Ill. App. 3d 864, 875, 417 N.E.2d 1029.

■ Accordingly, in applying the foregoing principles of law to the complained-of prosecutorial conduct and remarks made during the State's rebuttal closing argument, we conclude that such remarks were either proper and within the bounds as dictated under Illinois law, or if considered to be outside the acceptable boundaries of the law, were harmless error. We further conclude that such remarks were not a material factor in defendant's conviction in light of the overwhelming evidence of defendant's guilt and find no error or abuse of discretion which requires reversal.

Defendant's last contention is that the trial court erred in allowing the State to introduce the testimony of Lauren Adams and Cynthia Ruff that defendant allegedly had attacked them a short time prior to the incident for which he was on trial. Defendant asserts that assuming *arguendo* the incident was admissible, he was prejudiced unnecessarily where the witnesses were allowed to present excessive details of the incident although their testimony should have been confined to such details as show opportunity for identification.

It is well settled that evidence of crimes other than the one for which the defendant is being tried is not admissible to establish a propensity to commit criminal acts, but is only admissible to prove motive, intent, absence of mistake, or identity. (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) Because such evidence is prejudicial, it should not be admitted unless it reasonably can be said that its probative value outweighs its prejudicial effect. (*People v. Triplett* (1981), 99 Ill. App. 3d 1077, 425 N.E.2d 1236.) And, for such evidence to be admissible to show *modus operandi*, there must be a showing of similarity between the offenses, such as characteristics uncommon to most offenses of that nature. *People v. Tate* (1981), 87 Ill. 2d 134, 429 N.E.2d 470.

It is within the sound discretion of the trial judge to determine whether evidence of other crimes is relevant to a material issue and whether the probative value of such evidence outweighs its prejudicial impact. (*People v. Fuller* (1983), 117 Ill. App. 3d 1026, 454 N.E.2d 334.)

The trial court's determination will not be disturbed on review unless there exists a clear abuse of discretion.

In the present case, the crime committed against Faye and the incident involving Lauren and Cynthia are strikingly similar. In each incident, the women were attacked from behind by a man who ran toward them while displaying a large butcher knife. The incidents occurred at night time, in fact, on the night in question, within 15 minutes and two to three blocks apart. All of the women identified the 12-inch blade knife as the one used by the defendant in the attacks and described the clothing he wore that evening as a dark coat with a fur hood, blue jeans and light-colored boots. Additionally, on the night in question, three of the four women identified defendant as their assailant, either as he sat in the police car or during the lineup at the police station. With respect to the testimony about the details of the incident, our review of the record supports the State's contention made during the motion *in limine* to allow evidence of other crimes and the argument on defendant's motion for a new trial. It is the State's contention that it was necessary to explain all of the events involving Lauren and Cynthia, which includes their ability and opportunity to observe defendant, where the evidence shows that he wore a scarf across his face for most of the attack.

We find support for the State's contention in the record. Furthermore, we believe that the other crimes evidence was probative of defendant's intent to commit murder and identification of the knife used in the attacks. Thus, we believe that any prejudicial effect of the evidence is outweighed by its probative value. Additionally, the prejudicial effect of the other crimes evidence is minimized where, as here, the trial court properly instructed the jury as to the limited purpose of the other crimes evidence.

Accordingly, we find no abuse of discretion on the part of the trial court in allowing the admission of other crimes evidence under the circumstances of this case.

For the foregoing reasons, we affirm defendant's conviction and sentence for attempted murder.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.