THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DENIS LOPEZ, Defendant-Appellant.

First District (3rd Division)   No. 1—91—0093

Opinion filed March 31, 1993.

Rita A. Fry, Public Defender, of Chicago (Beth I. Solomon and Vicki Rogers, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Barbara Jones, and Brian Holmes, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Defendant, Denis Lopez, was convicted of attempted first degree murder and armed violence and was sentenced to 25 years' imprisonment.

On appeal defendant raises three issues as error regarding the instructions to the jury: (1) refusing to give an instruction on the offense of attempted second degree murder; (2) tendering the definitional instruction for murder which defines murder as requiring either a specific intent to kill or to do great bodily harm; and (3) refusing to instruct the jury on the offense of aggravated battery. Defendant also asserts that the 25-year sentence imposed constitutes an abuse of discretion.

We affirm defendant's conviction and sentence.

Defendant admits that on March 22, 1990, he shot Nancy Lopez, his estranged wife, five times but contends that he acted under a sudden and intense passion at the time of the shooting and that he had no intent to kill.

Nancy Lopez and defendant were married for 10 years prior to the day defendant committed the acts of violence against his wife. At trial, Ms. Lopez testified that for two or three years prior to March 1990, she and defendant were experiencing marital difficulties. In December 1989, Ms. Lopez told defendant that she had been involved in an extramarital affair for the past 1½ years and that the man with whom she was having an affair was the biological father of their son named Denis Lopez, Jr. On February 19, 1990, Ms. Lopez left defendant, went to her mother's house, but returned to him the following day.

During the first week of March 1990, Ms. Lopez informed defendant that she had filed for divorce. On March 14, 1990, while still living with defendant, she awoke to find that defendant had cut the sleeves off her jacket and cut up her waitress uniform. Ms. Lopez then took her two children and moved into her mother's house.

On March 21, 1990, Ms. Lopez called defendant and asked for three items—their checkbook, mortgage payment book, and some gym

clothes for their daughter, Christine. Defendant agreed to bring these items to Ms. Lopez the next day at Christine's grade school.

The next morning, March 22, 1990, Ms. Lopez accompanied her daughter to school. Defendant, who was standing across the street from the school, indicated to Ms. Lopez that he had the requested items. Ms. Lopez, together with her daughter, crossed the street, retrieved a bag containing the items, and entered the school.

As Ms. Lopez exited the school building alone, defendant approached her and fired a gun, wounding her in the head, heart, liver, back and abdomen. When the gun jammed, defendant began to bang it on the ground, attempting to unjam it. Two off-duty police officers then intervened and arrested defendant.

Detective Hugh Conwell testified that at the police station, defendant told Assistant State's Attorney George Andrews that after his telephone conversation with Ms. Lopez on the night of March 21, he went for a ride, purchased a gun on the street for $20, smoked some marijuana, drank some beer, and returned home.

Defendant testified that he felt "[v]ery bitter, very hurt" about his wife's affair and he wanted blood tests taken to determine who was the father of Denis Lopez, Jr., but his wife and her paramour would not comply. Defendant stated that his wife moved out for the first time in January 1990 but returned one day later and then moved out again in March. Ms. Lopez told defendant that she had filed for divorce sometime in February and by phone on the night before the incident, March 21.

Defendant testified at trial that he had purchased a gun one week before the incident, not the night of March 21 as reported in the statement he gave on the day of the incident. Defendant carried the fully loaded weapon with him when he left his house to meet Ms. Lopez on March 22. After Ms. Lopez took the bag containing the items she had requested and when Ms. Lopez was leaving their daughter's school, "she gave me a smirk and that just got me angry." Defendant pulled the gun from his jacket pocket, pointed it at his wife, pulled the trigger and continued to fire until the gun jammed. Defendant stated that he was in shock after the first shot but realizes that he caused all of Ms. Lopez's injuries.

The trial court refused defendant's tendered jury instructions on the offenses of attempted second degree murder and aggravated battery. The jury found defendant guilty of attempted first degree murder and armed violence.

At the sentencing hearing, the trial court acknowledged that defendant had a good employment record, supported his family, and

had no prior criminal record. However, the trial court found that these mitigating factors were "far outweighed by the aggravating factors presented" and characterized defendant's conduct as "heinous," "grossly reprehensible," and "vile." Defendant was sentenced to 25 years' imprisonment.

■ Defendant first asserts that the trial court erred in refusing to instruct the jury on the offense of attempted second degree murder but acknowledges that there has been a division among the appellate courts of our State as to whether such offense actually exists.

After the parties in the present case filed their respective briefs, this court specifically held that the offense of attempted second degree murder is not a crime in Illinois. (*People v. Aliwoli* (1992), 238 Ill. App. 3d 602, 606 N.E.2d 347.) In our discussion of the issue now presented by defendant, this court in *Aliwoli* considered the legislative history of the second degree murder statute and numerous primary and secondary authorities, including the same cases and sources cited by the parties. (See *People v. Reagan* (1983), 99 Ill. 2d 238, 457 N.E.2d 1260; *People v. Williams* (1991), 220 Ill. App. 3d 460, 581 N.E.2d 113; *People v. Austin* (1991), 215 Ill. App. 3d 323, 574 N.E.2d 1297; *People v. Moore* (1990), 204 Ill. App. 3d 694, 562 N.E.2d 215; Haddad, *Second Degree Murder Replaces Voluntary Manslaughter in Illinois: Problems Solved, Problems Created*, 19 Loy. U. Chi. L.J. 995 (1988); Steigmann, *First and Second Degree Murder in Illinois*, 75 Ill. B.J. 494 (1987); O'Neill, *An Analysis of Illinois' New Offense of Second Degree Murder*, 20 J. Marshall L. Rev. 209 (1986).) Accordingly, we find no error in the trial court's refusal to tender a jury instruction on attempted second degree murder.

■ Second, defendant contends that the trial court committed reversible error by tendering the definitional instruction for murder to the jury.

The State, conceding the error, asserts that it was harmless because the evidence overwhelmingly established defendant's intent to kill. We agree.

The parties correctly agree that the offense of attempted murder requires the mental state of a specific intent to commit murder. Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(a), 9—1(a); *People v. Jones* (1979), 81 Ill. 2d 1, 8, 405 N.E.2d 343.

Despite the specific intent requirement, the jury was given the following definition of first degree murder:

> "A person commits the offense of first degree murder when he kills an individual if, in performing the acts which cause the death, he intends to kill *or do great bodily harm to* that indi-

vidual or another." (Emphasis added.) Illinois Pattern Jury Instructions, Criminal, No. 7.01A (2d ed. Supp. 1989).

In an attempted murder case, an instruction which permits the jury to return a guilty verdict upon evidence that the defendant intended only to cause great bodily harm is improper because nothing less than a criminal intent to kill must be shown to convict for attempted murder. *People v. Harris* (1978), 72 Ill. 2d 16, 27, 377 N.E.2d 28.

However, the giving of erroneous instructions does not always justify reversal when the evidence of the defendant's guilt is so clear and convincing that the jury could not reasonably have found him not guilty. (*Jones*, 81 Ill. 2d at 9; *People v. Cloyd* (1987), 152 Ill. App. 3d 50, 504 N.E.2d 126.) In *Jones*, the supreme court found that "the intent to commit murder was blatantly evident from the circumstances" where the "victim was shot four times in the head, peppered with buckshot in his back, and had a shotgun pointed at him by the defendant." (*Jones*, 81 Ill. 2d at 10.) The court concluded that the error in the jury instructions was harmless because the intent to kill was so evident and because the error was minimized by the giving of an otherwise accurate attempted murder instruction. *Jones*, 81 Ill. 2d at 10.

In *Cloyd*, this court followed the tenets of *Jones* and found the error in the jury instruction to be harmless because the evidence of the defendant's intent to kill was blatantly clear. (*Cloyd*, 152 Ill. App. 3d at 54-56.) Although the defendant in *Cloyd* testified that he did not intend to kill the victim, the witnesses testified that the defendant held a gun against the victim's head and fired the gun at her four times at close range.

Similarly, in *People v. Felder* (1992), 224 Ill. App. 3d 744, 586 N.E.2d 729, the court held that the evidence of the defendant's intent to kill was overwhelming and thus, the erroneous jury instruction on the full definition of murder was harmless.

Even the most casual consideration of the evidence in the present case would establish defendant's clear intent to kill so that a jury could not reasonably have found him not guilty. The facts of *Jones*, *Cloyd* and *Felder* were subjected to the same kind of analysis that we have provided. 

A close examination of the facts in *Harris* will reveal that the evidence surrounding that occurrence is more closely balanced and therefore would require a more precise instruction on attempted murder. In *Harris*, defendant engaged in an angry argument with his girlfriend, the victim, over an extended period and thereafter she left the vehicle in which they had been traveling. When defendant exited the

motor vehicle, she reentered the car and drove off, being wounded when defendant fired his weapon at the moving vehicle. *Harris*, 72 Ill. 2d 16, 377 N.E.2d 28.

After Ms. Lopez left the marital home, defendant purchased a gun either one week or one day before the shooting. Defendant carried the gun in his jacket pocket when he left his house to meet Ms. Lopez at their daughter's school. Waiting until his daughter was safely inside the school building and Ms. Lopez was leaving the school, defendant aimed his gun directly at the victim, repeatedly fired even as the victim attempted to flee and scream for help, crawling wounded on all fours, and stopped only when the gun jammed. Considering defendant's actions, it is most difficult, if not impossible, to believe that he intended anything other than to deliberately cause her death.

Moreover, the supreme court in *Jones* considered the other jury instructions given and we note that the record in the present case reveals that the trial court properly instructed the jury on the definition of attempt (Illinois Pattern Jury Instructions, Criminal, No. 6.05 (2d ed. 1981)) and the issues in attempt (Illinois Pattern Jury Instructions, Criminal, No. 6.07 (2d ed. 1981)).

For all the foregoing reasons, we find that the giving of the partial definitional instruction for murder was harmless error.

■ Third, defendant asserts that the trial court erred in refusing defendant's tendered instructions on the offense of aggravated battery, a lesser included offense of attempted first degree murder. Defendant argues that such an instruction was warranted because the evidence called into question whether he possessed the specific intent to kill Ms. Lopez and because he was originally charged with two counts of aggravated battery.

Prior to trial, the State nol-prossed the aggravated battery charges, together with the aggravated unlawful restraint and unlawful use of a weapon charges.

The State contends that the trial court properly refused to instruct the jury on the lesser included offense of aggravated battery since, based on the evidence, no rational trier of fact could have found defendant guilty of that crime. We agree.

The offense of attempted murder requires the specific intent to kill the victim. (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(a), 9—1(a).) Aggravated battery, on the other hand, requires the intention or knowledge of the defendant that his actions, while in the commission of a battery, will cause great bodily harm. Ill. Rev. Stat. 1989, ch. 38, par. 12—4(a).

Aggravated battery is a lesser included offense of attempted murder. (*People v. Johnson* (1991), 219 Ill. App. 3d 460, 464, 579 N.E.2d 978.) An instruction on a lesser included offense is not required where the evidence rationally precludes such an instruction. *People v. Arnold* (1991), 218 Ill. App. 3d 647, 652, 577 N.E.2d 1355; *People v. Sanders* (1988), 168 Ill. App. 3d 295, 305, 522 N.E.2d 715; see also *People v. Fonville* (1987), 158 Ill. App. 3d 676, 685, 511 N.E.2d 1255 (where "the evidence is sufficient for a conviction on the greater offense, it is not reversible error to instruct only as to that offense").

Intent can be established by proof of surrounding circumstances, including the character of the assault, the use of a deadly weapon and other matters from which an intent to kill may be inferred. (*People v. Mitchell* (1991), 209 Ill. App. 3d 562, 569, 568 N.E.2d 292.) Moreover, the very act of firing a gun at a person supports the conclusion that the shooter manifested an intent to kill. *Mitchell*, 209 Ill. App. 3d at 569.

We believe that the evidence in the record rationally precludes instructions on aggravated battery.

■ Finally, defendant asserts that the imposition of a 25-year sentence was an abuse of the trial court's discretion because he had a history of financial stability, excellent prospects for rehabilitation, and no prior felony convictions.

The State contends that the sentence was appropriate since it falls within the statutory guidelines and the trial court detailed the factors it properly considered.

Defendant was convicted of the offenses of attempted murder and armed violence. At sentencing, the trial court merged those verdicts and entered a 25-year sentence on the conviction of attempted murder. The trial court found that the mitigating factors presented by defendant were outweighed by the aggravating factors and that the crime did not call for consideration of a minimum sentence.

A reviewing court will not disturb a sentence which falls within the statutory limits absent an abuse of discretion. (*People v. Lambrechts* (1977), 69 Ill. 2d 544, 372 N.E.2d 641; *People v. Abernathy* (1989), 189 Ill. App. 3d 292, 315, 545 N.E.2d 201.) The offense of attempted murder is a Class X felony (Ill. Rev. Stat. 1989, ch. 38, par. 8—4(c)(1)), which carries a sentence of not less than 6 years and not more than 30 years (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(3)). Accordingly, defendant received a sentence 19 years more than the minimum and 5 years less than the maximum.

The record reveals that the sentencing judge considered the mitigating factors now argued by defendant, specifically noting "that the

defendant is a man without a record and had a good employment record and the fact that he supported his family." Moreover, even if the trial court does not expressly state its consideration of all mitigating factors, such consideration is presumed where, as here, the mitigating factors were argued before the court. *People v. Watkins* (1990), 206 Ill. App. 3d 228, 246, 563 N.E.2d 806.

In addition, the trial court articulated aggravating factors, such as the location of the shooting at an elementary grade school with children in attendance, the repeated firing of the gun, the long passage of time (four months) since defendant discovered that his estranged wife's paramour was the biological father of her son, and the statutory aggravating factors argued by the State.

We find no reason to suggest that the appropriate factors were not considered by the trial court and no indication that the trial court abused its discretion in imposing a 25-year sentence on defendant.

Judgment affirmed.

TULLY, P.J., and RIZZI, J., concur.