THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HERBERTO PULGAR, Defendant-Appellant.

First District (4th Division)  No. 1—99—1779

Opinion filed June 21, 2001.

1002

Michael J. Pelletier and Michael C. Bennett, both of State Appellate Defender's Office, and Gwendolyn Anderson, both of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Michele Grimaldi Stein, and Alan J. Spellberg, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HOFFMAN delivered the opinion of the court:

Following a bench trial, the defendant, Herberto Pulgar, was convicted of aggravated battery (720 ILCS 5/12—4 (West 1996)) and the commission of a hate crime (720 ILCS 5/12—7.1 (West 1996)). He was sentenced to an extended term of nine years' imprisonment for aggravated battery and three years' imprisonment for the hate crime, with the sentences to run consecutively. The defendant filed the instant appeal, contending that: (1) his due process rights were violated when the State obtained an indictment against him for a hate crime after the trial court, at a preliminary hearing, found insufficient evidence to establish probable cause for the charge; (2) the State presented perjured testimony to the grand jury; (3) his conviction of both aggravated battery and a hate crime violates the "one-act, one-crime" doctrine; (4) the State failed to prove him guilty of either offense beyond a reasonable doubt; (5) the sentence imposed by the trial court constituted an abuse of discretion; and (6) his attorney was ineffective for failing to object to the admission of hearsay testimony. For the reasons that follow, we affirm the defendant's conviction and sentence for aggravated battery and vacate his conviction and sentence for the commission of a hate crime.

On the morning of February 2, 1997, Russell Johnson fled on foot from the defendant and a second, unidentified man who had directed racial remarks at him. The men pursued Johnson in a vehicle. The defendant was driving the vehicle when it struck Johnson, who suffered a broken leg. That evening, the defendant was arrested and charged with aggravated battery and the commission of a hate crime.

At the defendant's preliminary hearing, Johnson testified, *inter alia*, that it was the vehicle's passenger that had yelled racial slurs at him. After the preliminary hearing, the trial court found probable cause for the aggravated battery charge placed against the defendant but found insufficient evidence to establish probable cause to charge him with a hate crime. Subsequently, the grand jury returned a five-count indictment against the defendant, charging him with one count of attempted murder, three counts of aggravated battery, and one count of hate crime.

The defendant filed a motion to dismiss the indictment, in which

he argued that the State procured the indictment through the use of perjured testimony. The trial court denied the motion. Thereafter, the defendant waived his right to a jury trial, and a bench trial was conducted on the charges set forth in the indictment. We will set forth only that evidence introduced at trial that is relevant to our disposition of the issues raised in this appeal.

At approximately 5:30 a.m. on February 2, 1997, Johnson and Lylani Roldan were standing at a bus stop located on the corner of Belmont and Cicero Avenues in Chicago when a Chevrolet Blazer passed them going westbound. According to Roldan, the driver of the vehicle, whom she later identified as the defendant, yelled at her and Johnson, but she could not hear his exact words. She testified that the vehicle returned approximately five minutes later and stopped directly in front of the bus stop where she and Johnson were standing. Roldan stated that the passenger rolled down his window and said to Johnson, "nigger come here." When she asked Johnson whether he knew this individual, the passenger said "shut up bitch." Roldan testified that she then asked the passenger if he knew her, whereupon he said "shut up you spic bitch" and asked "why are you with that nigger?" The passenger then spit at Johnson. As the vehicle began to pull away, Johnson spit back at the passenger and threw a cup at the vehicle. According to Roldan, the defendant stopped the vehicle, and both he and the passenger got out. Roldan then told Johnson that the passenger had a gun, which caused him to begin running southbound on Cicero Avenue. As they approached, the defendant threw a garbage can at Roldan and the passenger threw a bottle at her. They then returned to their vehicle and pursued Johnson down Cicero Avenue, the defendant again driving.

According to Roldan, Johnson was running in the parking lane, three or four feet from the curb. As Johnson began to cross the street, the defendant accelerated. The defendant's vehicle eventually blocked Roldan's view of Johnson. She testified, however, that she saw Johnson fly into the air and land near the curb. Roldan stated that she did not see the brake lights on the defendant's vehicle activate prior to the time that she saw Johnson fly into the air, nor did she see the vehicle decelerate. Roldan spoke to police officers both at the scene of the occurrence and later at the police station. She identified the defendant both from a photographic array and at a lineup.

On cross-examination, Roldan denied telling Steve DeJesus, an investigator engaged by the defendant, that the passenger in the defendant's vehicle only gave her dirty looks or that the defendant swerved before he hit Johnson. She also denied telling the police that it was the passenger that threw a garbage can at her.

Johnson's testimony corroborated that of Roldan in most respects. According to Johnson, however, when the vehicle that struck him passed the first time, the passenger yelled "nigger, I'll be back." He testified that, as he was running southbound on Cicero Avenue, he heard the vehicle accelerate and he froze. Johnson stated that the vehicle came "dead at" him and hit him "head on." He could not, however, identify the defendant. Johnson suffered a broken leg, abrasions, and bruises when he was hit. He was hospitalized for one week.

On cross-examination, Johnson denied telling the police that he could not hear what the passenger said when the vehicle first passed him and Roldan. He again admitted that it was the passenger in the vehicle, not the driver, who yelled at him.

After the trial court denied the defendant's motion for a directed judgment of acquittal, he presented his case in chief. The defendant's first witness was his investigator, DeJesus, who testified that he interviewed Roldan in September of 1998. According to DeJesus, Roldan told him that, when the defendant's vehicle first passed, the defendant and the passenger only gave her and Johnson dirty looks and that the defendant attempted to swerve to avoid hitting Johnson with his vehicle.

The defendant also presented the testimony of Chicago police detectives Louis Rabbit and Michael Mazupappa, two of the investigating officers. Rabbit testified that Roldan told him that, when she first saw the defendant's vehicle, the vehicle made a U-turn and stopped in front of her and Johnson. According to Rabbit, Roldan never told him that Johnson threw anything at the defendant's vehicle. Both Detectives Rabbit and Mazupappa testified that Roldan stated that it was the passenger who threw a garbage can at her. Mazupappa also testified that Johnson told him that he could not hear what the passenger said the first time that the defendant's vehicle passed by him. After the officers testified, the defense rested.

Before rendering its judgment, the trial court stated that it did not believe that Roldan told DeJesus that the defendant attempted to avoid hitting Johnson. The trial court then acquitted the defendant of attempted murder but found him guilty of aggravated battery and a hate crime. It denied the defendant's subsequent motion for a new trial and imposed consecutive sentences of nine years in prison for aggravated battery and three years in prison for the hate crime.

Before addressing the substantive issues raised by this appeal, we believe that certain procedural matters that arose after the filing of the appellant's brief are worthy of note. The State filed its initial brief in this case on December 13, 2000. On January 11, 2001, the defendant filed a motion for an extension of time to file a reply brief. On

January 18, 2001, we granted that motion and extended the time for the filing of his reply brief to March 1, 2001.

On January 19, 2001, the Illinois Supreme Court entered an order suspending the defendant's attorney, Gwendolyn Dale Anderson, from the practice of law for a period of 18 months. Official Reports Advance Sheet No. 5 (March 7, 2001), M.R. 17157, at *13*. On January 25, 2001, this court, unaware of Ms. Anderson's suspension, *sua sponte* entered an order directing the defendant to address, in his reply brief due on March 1, 2001, the applicability of the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), to the consecutive sentences imposed upon him. In that same order, we directed the State to file a supplemental brief addressing the same issue by March 1, 2001. Subsequent to the entry of that order, we scheduled this matter for oral argument on March 8, 2001.

The State filed its supplemental brief on February 22, 2001. No reply brief was filed on behalf of the defendant prior to the oral argument scheduled for March 8, 2001. When this case was called for argument on that date, no one appeared in court to represent the defendant.

Immediately subsequent to the cancelled argument, this court discovered for the first time that Ms. Anderson had been suspended from the practice of law. As a consequence, we entered an order on March 8, 2001, appointing the State Appellate Defender as additional counsel for the defendant and directing him to file, on or before April 11, 2001, a reply brief also addressing the *Apprendi* issue referenced in our order of January 25, 2001.

On March 15, 2001, pursuant to an emergency motion filed by Ms. Anderson, the Illinois Supreme Court entered an order staying her suspension pending, *inter alia*, the filing of the defendant's reply brief in this appeal. Official Reports Advance Sheet No. 5 (March 7, 2001), M.R. 17157, at *13*. The State notified this court of the supreme court's stay order on March 21, 2001.

Finding that the defendant would be in need of representation past the filing of his reply brief, we entered an order, on March 23, 2001, reaffirming the appointment of the State Appellate Defender as additional counsel for the defendant. On April 5, 2001, the State Appellate Defender filed a reply brief on behalf of the defendant addressing both the issues raised in the defendant's opening brief and the *Apprendi* issue referenced in our January 25, 2001, order. Ms. Anderson neither filed a reply brief on behalf of the defendant by the April 11, 2001, due date, nor sought any extension of time to do so. This court subsequently scheduled the matter for oral arguments on June 7,

2001. On May 7, 2001, the Illinois Supreme Court entered an order lifting the stay of Anderson's suspension. On June 7, 2001, the State Appellate Defender appeared in court and argued on the defendant's behalf.

●1 We turn now to the substantive issues raised by this appeal. The defendant first argues that his due process rights were violated when the State obtained an indictment against him for the commission of a hate crime after the trial court found that no probable cause existed to charge him with that offense. As the State points out, the defendant's argument in this regard is unsupported by any citation to authority, a violation of Supreme Court Rule 341(e)(7) (177 Ill. 2d R. 341(e)(7)). Lack of authority aside, we find the argument to be wholly without merit. When, as in this case, the State proceeds first by means of a complaint or information and a finding of no probable cause on the charge is entered at a preliminary hearing, the State can subsequently seek and obtain a grand jury indictment of the defendant for the same offense. See *People v. Kent*, 54 Ill. 2d 161, 295 N.E.2d 710 (1972).

Next, the defendant argues that his due process rights were violated in that the State presented perjured testimony to the grand jury to obtain the five-count indictment against him. He contends that the trial court erred in denying his motion to dismiss the indictment on that ground. As the State correctly points out, the defendant's motion to dismiss was directed to only the hate crime count of the indictment. On appeal, however, the defendant also challenges the aggravated battery counts of the indictment. He apparently asserts that the allegedly false testimony that pertained to the hate crime charge tainted the grand jury proceedings and that, accordingly, the entire indictment should have been dismissed. Having failed to challenge the aggravated battery counts of the indictment in his pretrial motion, the defendant waived the argument that those counts should have been dismissed. See *People v. Thomas*, 178 Ill. 2d 215, 234, 687 N.E.2d 892 (1997) (argument raised for the first time on appeal is deemed waived). Waiver aside, the defendant's argument pertaining to the aggravated battery counts of the indictment must fail as it hinges entirely on the success of his argument that the hate crime count was obtained through the use of perjured testimony, an argument that itself lacks merit. The burden was on the defendant to show that the State prevented the grand jury from returning a meaningful indictment (*People v. DiVincenzo*, 183 Ill. 2d 239, 258, 700 N.E.2d 981 (1998)) by knowingly presenting perjured testimony (see *People v. Creque*, 72 Ill. 2d 515, 523-24, 382 N.E.2d 793 (1978)). The record in this case reflects that the defendant failed to meet this burden.

•2 Initially, we note that the record does not contain transcripts of the preliminary hearing or grand jury proceedings. The State correctly points out that it is the defendant's burden to provide us with a record sufficient to allow a review of his claims and that, in the absence of a complete record, we will presume the trial court's ruling was correct. *People v. Balaj*, 265 Ill. App. 3d 1070, 1079, 638 N.E.2d 377 (1994). The defendant, however, did attach to his motion to dismiss the indictment brief excerpts of testimony from each of the proceedings. An excerpt of Johnson's testimony at the preliminary hearing reveals that he testified that it was the passenger who yelled racial slurs at him. An excerpt of Officer Vanderpotte's testimony before the grand jury reveals that he testified that he was "informed" that the defendant directed racial slurs at Johnson. It is upon this stated testimony that the defendant bases his perjury claim and, accordingly, we find the excerpts to be sufficient to allow our review of the issue.

In support of his perjury argument, the defendant contends that, at the time of his testimony, Officer Vanderpotte was aware that neither Johnson nor Roldan had identified him as the person who made the racial comments. He further contends that both the officer and the State were aware of Johnson's preliminary hearing testimony that it was the vehicle's passenger who made the comments in question.

The trial court conducted an evidentiary hearing on the defendant's motion to dismiss the hate crime count of the indictment. Officer Vanderpotte testified that, prior to appearing before the grand jury, he reviewed a case report of the incident prepared by another officer which indicated that Roldan stated that the "offenders had stopped their vehicles [*sic*], across the street and started yelling profanities and making racial remarks." Vanderpotte indicated that, when he spoke to Roldan, she used the word "offenders," "[a]s in both" the defendant and the passenger. He also testified that he never interviewed Johnson, did not speak to any of the officers who interviewed Johnson, and was not present when Johnson testified at the preliminary hearing.

Vanderpotte's partner, Chicago police officer Wilson, testified that he spoke to Roldan, who confirmed that racial remarks were made. He could not, however, recall whether Roldan identified the defendant or the passenger as the person who made the racial statements. Wilson testified that he did not interview Johnson and was not present when Johnson testified at the preliminary hearing.

At the conclusion of the hearing, the trial court denied the defendant's pretrial motion to dismiss the hate crime count of the indictment, finding that Vanderpotte did not knowingly provide false testimony to the grand jury. The defendant contends its ruling was in error. We disagree.

•3 A witness's testimony constitutes perjury only if the witness knowingly makes a false statement. *People v. Moore*, 199 Ill. App. 3d 747, 766, 557 N.E.2d 537 (1990). Officer Vanderpotte testified only that he had been "informed" that the defendant directed racial slurs at Johnson. Vanderpotte's testimony at the hearing on the motion to dismiss established that he had been informed that the "offenders" yelled racial slurs both by a police report and by Roldan herself. The fact that the information communicated to the officer was hearsay which may ultimately have been false does not render Vanderpotte's testimony perjurious. We note that the State was under no obligation to inform the grand jury that Vanderpotte's testimony constituted hearsay (*Creque*, 72 Ill. 2d at 523-24), and the hearsay nature of the testimony did not affect the validity of the indictment returned against the defendant (*People v. Fassler*, 153 Ill. 2d 49, 60, 605 N.E.2d 576 (1992)).

We also reject the defendant's argument that both Vanderpotte and the State intentionally misled the grand jury by proffering to it testimony that the defendant yelled racial slurs at Johnson when Johnson himself testified to the contrary at the preliminary hearing. First, the trial court determined that Vanderpotte was not present when Johnson testified at the preliminary hearing, was unaware of that testimony at the time that he appeared before the grand jury, and obtained his information about the incident from the reports that he read and from sources other than Johnson. Because the trial judge was in the best position to judge the credibility of the witnesses, we will not disturb his findings in this regard. See *People v. Ferro*, 195 Ill. App. 3d 282, 291, 551 N.E.2d 1378 (1990). Further, even if Vanderpotte was aware of Johnson's testimony, that would not render false his testimony that he had been informed, by a second witness to the crime, Roldan, that the defendant yelled racial slurs. For this reason, the State cannot be said to have knowingly presented false testimony simply because it was aware of the apparent discrepancy between Johnson's testimony and Vanderpotte's. It is well settled that the State is not obligated to present exculpatory information to a grand jury (*People v. Torres*, 245 Ill. App. 3d 297, 300-01, 613 N.E.2d 338 (1993)) and, accordingly, was under no obligation to inform the grand jury of Johnson's testimony at the earlier proceeding.

•4 We will next address the defendant's argument that his convictions for aggravated battery and a hate crime are based on the same physical act, that of striking Johnson with his vehicle, in violation of the one-act, one-crime doctrine. For this reason, he contends, we cannot allow both convictions to stand. The State urges us to treat this issue as having been waived due to the defendant's failure to raise it at

trial or in his posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988). However, when a defendant is improperly convicted and sentenced for multiple offenses carved from the same physical act, as the defendant here claims to have been, a substantial right is implicated. Accordingly, we will review the merits of the defendant's claim. See *People v. Hicks*, 181 Ill. 2d 541, 545, 693 N.E.2d 373 (1998); 134 Ill. 2d R. 615(b).

●5 Succinctly put, the one-act, one-crime doctrine stands for the proposition that "[m]ultiple convictions are improper if they are based on precisely the same physical act." *People v. Rodriguez*, 169 Ill. 2d 183, 186, 661 N.E.2d 305 (1996). Multiple convictions and sentences are permitted, though, when a defendant has committed several acts, despite the interrelationship of those acts. *People v. King*, 66 Ill. 2d 551, 566, 363 N.E.2d 838 (1977).

●6 Prosecutorial intent, as it is reflected in the wording of the charging instrument, is a significant factor in determining whether the defendant's conduct constituted separate acts capable of supporting multiple convictions. *People v. Baity*, 125 Ill. App. 3d 50, 54, 465 N.E.2d 622 (1984). The aggravated battery counts of the indictment are all premised on the allegation that the defendant struck Johnson with a pickup truck, thus reflecting the State's intention to charge the defendant with aggravated battery by reason of that act. We must compare this to the allegations of the hate crime count of the indictment.

●7 A person commits a hate crime when he commits one of certain enumerated offenses, including battery, by reason of, among other things, the victim's race. 720 ILCS 5/12—7.1(a) (West 1996). The hate crime count of the indictment in the instant case alleges that the defendant:

> "[B]y reason of the race of Russell Johnson committed a battery upon Russell Johnson, to-wit: he struck Russell Johnson with a pick-up truck after the passenger of the pick-up truck the defendant was driving called Russell Johnson a 'nigger' and spit on him *** ."

We believe that this language clearly reflects the State's intent to charge the defendant with a hate crime based upon his physical act of striking Johnson with his vehicle, the requisite predicate battery, committed while motivated by Johnson's race. The State argues that the hate crime count of the indictment also alleges the commission of a second battery, namely, the passenger's act of spitting at Johnson and calling him a "nigger," for which the defendant is accountable. It contends that this second battery can serve as the predicate offense for the hate crime charge without violating the one-act, one-crime doc-

trine. We reject this contention. The reference in the indictment to the passenger's conduct is clearly a factual allegation in support of the assertion that the defendant struck Johnson with a vehicle by reason of Johnson's race. It supports the motivation element of a hate crime, not the predicate offense element.

●8 In this case, the defendant's act of striking Johnson with a vehicle formed the basis of both his conviction for aggravated battery and his conviction for a hate crime. Because the same physical act formed the basis for both charges, multiple convictions were improper. *People v. Donaldson*, 91 Ill. 2d 164, 170, 435 N.E.2d 477 (1982). Judgment should have been entered and sentence imposed on only the more serious of the two offenses. *Donaldson*, 91 Ill. 2d at 170. Aggravated battery is a Class 3 felony (720 ILCS 5/12—4(e) (West 1996)), and a hate crime is a Class 4 felony (720 ILCS 5/12—7.1(b) (West 1996)). Accordingly, we vacate the defendant's conviction and sentence for a hate crime.

Because we have vacated the defendant's conviction and sentence for a hate crime, we need not address the following issues raised by the defendant: (1) whether he was proven guilty of a hate crime beyond a reasonable doubt; (2) whether his attorney was ineffective in failing to object to hearsay testimony going to the motive element of the hate crime charge; and (3) whether the trial court properly imposed consecutive sentences. We will next address the defendant's argument that he was not proven guilty of aggravated battery beyond a reasonable doubt.

●9 A person commits an aggravated battery when, in committing a battery, he "intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement." 720 ILCS 5/12—4(a) (West 1996). The defendant contends that the evidence in this case was insufficient to establish either that he intended to strike Johnson with his vehicle or that Johnson suffered great bodily harm. Based upon the record before us, we find both contentions to be meritless.

●10 We will not reverse a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt. *People v. Wilson*, 155 Ill. 2d 374, 379, 614 N.E.2d 1227 (1993). When faced with a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found that the State established each element of the crime beyond a reasonable doubt. *People v. Campbell*, 146 Ill. 2d 363, 374, 586 N.E.2d 1261 (1992). The determinations as to the weight to be given to the testimony of the witnesses, their credibility, and the reasonable inferences to be drawn from the evidence are matters within the province

of the trier of fact. *People v. Cooper*, 194 Ill. 2d 419, 431, 743 N.E.2d 32 (2000).

●11 What constitutes great bodily harm is generally a question of fact for the trier of fact. *People v. Matthews*, 126 Ill. App. 3d 710, 715, 467 N.E.2d 996 (1984). In this case, as a result of having been struck by the defendant's vehicle, Johnson was hospitalized for one week and suffered, among other injuries, a broken leg. We believe that evidence of such an injury is more than sufficient to support the conclusion that Johnson suffered "great bodily harm." See *Matthews*, 126 Ill. App. 3d at 715; *People v. Olmos*, 67 Ill. App. 3d 281, 384 N.E.2d 853 (1978).

●12 The defendant also contends that the State failed to prove that he intended to hit Johnson with his vehicle. Intent can be established by proof of surrounding circumstances, including the character of the assault and other matters from which an intent may be inferred. *People v. Lopez*, 245 Ill. App. 3d 41, 47, 614 N.E.2d 329 (1993). In this case, Roldan testified that, after Johnson began running southbound on Cicero Avenue, the defendant drove his vehicle in the same direction. She stated that, as Johnson began to cross the street, the defendant's vehicle began to accelerate. Roldan testified that she did not see the brake lights on the defendant's vehicle activate prior to the time that she saw Johnson fly into the air, nor did she see the vehicle decelerate. Johnson testified that, as he was running, he heard the vehicle that struck him accelerate. He further stated that the vehicle came "dead at" him and hit him "head on." The testimony of Roldan and Johnson is sufficient to support an inference that the defendant intended to strike Johnson with his vehicle.

Next we will address the issues related to the sentence imposed by the trial court for the defendant's aggravated battery conviction.

As stated earlier, the trial court sentenced the defendant to nine years' imprisonment on his conviction for aggravated battery. On appeal, the defendant contends that a nine-year sentence is not authorized by statute and that the imposition of an extended term is unconstitutional under the holding in *Apprendi*. We disagree.

●13 Aggravated battery is a Class 3 felony. 720 ILCS 5/12—4(e) (West 1996). Section 5—8—1(a)(6) of the Unified Code of Corrections (Code) provides that the sentence of imprisonment for a Class 3 felony is not less than two years and not more than five years. 730 ILCS 5/5—8—1(a)(6) (West 1996). Pursuant to section 5—8—2 of the Code, though, a trial court may impose an extended-term sentence of not less than 5 years and not more than 10 years upon a defendant convicted of a Class 3 felony when it finds that one or more of the aggravating factors set forth in section 5—5—3.2(b) (730 ILCS 5/5—5—

3.2(b) (West 1996)) are present. 730 ILCS 5/5—8—2(a)(5) (West 1996). Among the aggravating factors enumerated in section 5—5—3.2(b) is that a defendant convicted of a felony has been convicted, within 10 years prior, of the same or greater class felony arising out of a different series of acts and upon charges separately brought and tried. 730 ILCS 5/5—5—3.2(b)(1) (West 1996).

●14 The record reflects that the defendant had, within 10 years of his conviction in the instant case, been convicted of two Class 2 felonies, possession of a stolen motor vehicle (625 ILCS 5/4—103(b) (West 1996)) and robbery (720 ILCS 5/18—1(b) (West 1996)). It also appears that these prior convictions arose out of a different series of acts than those that gave rise to his conviction in this case and were based on charges separately brought and tried. Consequently, the defendant was eligible for an extended-term sentence of 5 to 10 years, and his contention that his nine-year sentence for aggravated battery is not authorized by statute lacks merit. Remaining, however, is the question of the constitutionality of the imposition of an extended-term sentence upon the defendant.

Citing to the rule announced by the United States Supreme Court in *Apprendi*, the defendant argues that section 5—8—2 of the Code, pursuant to which his extended-term sentence was imposed, is unconstitutional. The defendant notes that section 5—8—2 neither provides for notice to the defendant of the State's intent to seek an extended-term sentence nor requires that the facts upon which such a sentence is based be proved to a jury beyond a reasonable doubt. Based on this argument, he claims that his extended-term sentence for aggravated battery should be vacated.

In *Apprendi*, the Supreme Court held that, under the due process clause and the notice and jury trial guarantees contained, respectively, in the fifth and sixth amendments to the United States Constitution, any fact that increases the maximum penalty for a crime must be charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. The *Apprendi* Court, though, explicitly held that prior convictions constitute an exception to its holding in this regard. *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

As stated above, it was on the basis of a prior conviction that the defendant's extended sentence for aggravated battery was imposed. 730 ILCS 5/5—5—3.2(b)(1) (West 1996). Nevertheless, the defendant still contends that we should hold that the imposition of an extended-term sentence in this case is unconstitutional. In support of this contention, he makes the same arguments that were made and rejected by this court in *People v. Dillard*, 319 Ill. App. 3d 102, 745 N.E.2d 185

(2001). For the reasons stated in *Dillard*, we reject the defendant's assertion that *Apprendi* renders an extended-term sentence based upon the aggravating factor set forth in section 5—5—3.2(b)(1) of the Code unconstitutional. See also *People v. Davis*, 319 Ill. App. 3d 572, 746 N.E.2d 758 (2001).

Based upon the foregoing analysis, we vacate the defendant's conviction and sentence for a hate crime and affirm his conviction and sentence for aggravated battery.

Affirmed in part and vacated in part.

HARTMAN, P.J., and BARTH, J., concur.