2020 IL App (1st) 180119-U

THIRD DIVISION
April 22, 2019

No. 1-18-0119

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 7335 |
| | ) | |
| THEODORE STEWART, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Vincent M. Gaughan, |
| | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Ellis and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant failed to prove that trial counsel was ineffective based on her failure to impeach the police officer witness with the audio component of body camera footage where the choice to not play the audio was a reasonable strategic decision and defendant suffered no prejudice. Additionally, defendant's ineffective assistance claim based on counsel's failure to impeach the officer with evidence of his disciplinary history was not properly before the court on direct appeal where no evidence regarding the officer's disciplinary history existed in the record.

¶ 2    After a bench trial, defendant, Theodore Stewart, was found guilty of one count of unlawful use or possession of a weapon by a felon, and was sentenced to 48 months' imprisonment.

In this direct appeal from that judgment, defendant contends that his trial counsel was ineffective for failing to impeach the State's witness, Chicago Police Officer Marcos Hernandez, with alleged discrepancies between his testimony and body camera footage, and with information about the officer's disciplinary history.

¶ 3     The record shows that defendant was charged by indictment with seven counts of various firearm-related offenses. At trial, Officer Hernandez testified that on April 24, 2017, he was on duty and was working with his partner, Officer Andrew Davis. Officer Hernandez was in plain clothes, and was riding in the passenger seat of an unmarked SUV.

¶ 4     Around 10:50 a.m., Officer Hernandez saw a man, who he identified in court as defendant, on the street in the area of 2859 West Roosevelt Road. Officer Hernandez described defendant as wearing a blue Chicago Cubs jacket, grey jeans and a grey cap. Officers Davis and Hernandez approached defendant with the intent of conducting a field interview. Officer Davis drove up to defendant, and when Officer Hernandez began to open his car door, defendant fled on foot.

¶ 5     Officer Hernandez ran after defendant northbound through an abandoned lot and into an alley. Officer Hernandez testified that, upon entering the alley, defendant changed direction and ran westbound through the alleyway. Officer Hernandez pursued defendant and saw defendant remove an object from his waistband with his right hand and throw it on the ground. Officer Hernandez testified that he was ten to fifteen feet behind defendant when defendant threw the object to the ground. He testified that nothing was obstructing his view at the time, and that the lighting conditions were "bright" and "naturally illuminated." Officer Hernandez testified that he immediately recovered the object before continuing his pursuit. Officer Hernandez described the recovered item as "[a] silver firearm .45 caliber with a black handle."

¶ 6    Defendant continued to run westbound past Francisco Avenue before turning southbound again toward Roosevelt Road. Officer Hernandez testified that, at this point, defendant had removed his jacket, and was then wearing a white t-shirt, grey pants and a grey cap. Officer Hernandez continued to pursue defendant, and when defendant reached the south side of Roosevelt Road, defendant attempted to get inside a white sedan parked at that location. However, Officer Hernandez's partner intercepted defendant by parking the unmarked vehicle in front of the white sedan, cutting it off from fleeing the scene. Officer Hernandez then took defendant into custody.

¶ 7    Officer Hernandez testified that he kept the firearm in his care, custody and control until arriving at the police station, at which time he inventoried it. The firearm contained ten live rounds. One was loaded into the chamber, and nine were in the magazine.

¶ 8    Officer Hernandez further testified that the incident was captured on his body camera, that he had previously reviewed the footage, and that the footage accurately reflected the events of April 24, 2017. Officer Hernandez identified the video footage from his body camera showing the pursuit, which was admitted into evidence and published. Officer Hernandez identified himself sitting in the passenger seat of the unmarked police vehicle at the beginning of the footage. Officer Hernandez also identified defendant, standing outside of the car wearing a blue jacket, grey cap and grey jeans. Although the video footage was very shaky during the pursuit and defendant's disposal of the gun was not discernable, Officer Hernandez testified that he saw defendant throw the gun just before he reached the pavement of the alley. Officer Hernandez indicated the object that he went to retrieve on the body camera video, and testified that when he went to retrieve it, he could see his partner Officer Davis attempting to cut defendant off at the white sedan. After stopping to retrieve the handgun from the ground, Officer Hernandez continued his pursuit, and the footage showed defendant again ten seconds later, wearing a grey cap with a white T-shirt and

3

grey jeans. Officer Hernandez testified that he shouted at defendant to "Stop, get on the ground" as he chased him.

¶ 9     On cross-examination, Officer Hernandez testified that he did not see a gun at the time he first approached defendant, but he did see defendant's hand holding one of his pockets. Officer Hernandez acknowledged that he did not note that defendant was holding his pocket in the arrest report. Officer Hernandez also did not see a gun when defendant turned to run away, but stated that defendant ran while holding his side with his right arm bent and his hand upon his hip. Officer Hernandez, again, did not record those details in the arrest report. Officer Hernandez testified that defendant began to run westbound in the north alley of Roosevelt when he tossed the gun from his waistband. The alley ran through the end of an abandoned lot, part of which was fenced off. Officer Hernandez testified that the fence came up to around his waist.

¶ 10    Officer Hernandez testified that he was about two to three feet from the alleyway pavement when he saw defendant toss the gun. He did not indicate that distance in the arrest report. Officer Hernandez testified that he heard defendant's gun hit the ground after defendant threw it, and that the gun made a "loud clacking" sound when it hit the pavement. Officer Hernandez also did not indicate the sound the gun made in the arrest report. Officer Hernandez testified that he had not searched the area of the alleyway prior to pursuing defendant. He further testified that he did not believe the building next to the alleyway to be abandoned, but he did not investigate whether anyone occupied the building. Officer Hernandez testified that both the alley and the lot that led into it were open to the public, and that the area in which the incident occurred is considered a high-crime area.

¶ 11    Officer Hernandez secured the gun before continuing to chase defendant. He testified that it took him "[m]aybe 20 seconds" to eventually detain defendant. Officer Hernandez testified that

he saw defendant toss the gun with his right hand, and that the gun had been in defendant's waistband. Officer Hernandez testified that he did indicate in his general case report that defendant had thrown the gun from his waistband with his right hand, but did not do so in the arrest report.

¶ 12    Defense counsel also played the body camera footage during cross-examination. Officer Hernandez testified that about 20 to 30 seconds passed from the time he first saw defendant to the time that defendant was arrested. He further testified that the body camera recorded audio, but that the audio was not playing in the court room. Officer Hernandez never shouted "gun" as he pursued defendant or when he recovered the weapon because he was chasing defendant by himself. Officer Hernandez identified defendant in the video, standing next to a black gated fence at the edge of the lot that led into the alleyway. Officer Hernandez acknowledged that the video showed the fence to be taller than defendant, but stated that he recalled the fence being shorter. Officer Hernandez further acknowledged an instance shown in the body camera footage where he lost sight of defendant.

¶ 13    Following Officer Hernandez's testimony, the State entered a certified copy of Stewart's prior conviction for unlawful possession of a weapon by a felon under case number 10 CR 0576201. The State rested, and the court denied defendant's motion for a directed verdict. Defendant exercised his right not to testify.

¶ 14    During closing argument, defense counsel argued that a lack of evidence, as well as conflicting evidence, created reasonable doubt as to whether defendant knowingly possessed the recovered firearm. Counsel claimed that there was "no way" that Officer Hernandez saw defendant toss a gun when the video did not show defendant doing so. Counsel argued that Officer Hernandez thought "he saw what he saw, but he didn't." Counsel claimed that the video did not match Officer Hernandez's testimony, stating that "the officer thinks that he saw [defendant] toss a gun but we

cannot see [defendant] running holding his side like the officer said." Counsel also pointed to Officer Hernandez's mistaken recall of the fence's height as evidence that the officer misremembered the incident. Counsel further claimed that Officer Hernandez's memory was unreliable because he failed to include "most of the observations that he [said] he made" in the arrest report. Finally, counsel noted that defendant's fingerprints were not found on the gun.

¶ 15 The trial court found that the State proved the elements of unlawful use or possession of a weapon by a felon beyond a reasonable doubt. The court acknowledged that some of Officer Hernandez's testimony was not reflected in the police report, but it found the omissions to be "very minor." The court further acknowledged that body cameras had "limitations," and that the other observations of the officer concerning defendant and his flight, as well as the recovery of the weapon itself, supported Officer Hernandez's testimony. The trial court found defendant guilty of one count of unlawful use or possession of a weapon by a felon and sentenced him to 48 months' imprisonment.

¶ 16 Defendant filed a timely notice of appeal, and in this court, defendant argues that his trial counsel was ineffective for failing to use the audio from the body camera footage, and evidence regarding Officer Hernandez's disciplinary history, to impeach his trial testimony.

¶ 17 Every criminal defendant has a constitutional right to receive effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I § 8; *Strickland v. Washington,* 466 U.S. 668, 685 (1984). The right to effective assistance of counsel entails "reasonable, not perfect, representation." *People v. Wilborn,* 2011 IL App (1st) 092802, ¶ 79.

¶ 18 Claims of ineffective assistance are governed by the standard set forth in *Strickland*, 466 U.S. 668. See *People v. Albanese*, 104 Ill. 2d 504, 526 (1984) (adopting *Strickland*). To prevail on a claim of ineffective assistance, a defendant must demonstrate that counsel's performance was

deficient, and that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687. More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms, and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A defendant must satisfy both prongs of the *Strickland* test in order to prevail on a claim of ineffective assistance of counsel. *People v. Flores*, 153 Ill. 2d 264, 283-84 (1992).

¶ 19    With respect to the first prong, the defendant must overcome the "strong presumption" that counsel's action or inaction was the result of sound trial strategy. *People v. Jackson*, 205 Ill. 2d 247, 257 (2001); *People v. Shelton*, 401 Ill. App. 3d 564, 584 (2010). "In recognition of the variety of factors that go into any determination of trial strategy, claims of ineffective assistance of counsel must be judged on a circumstance-specific basis, viewed not in hindsight, but from the time of counsel's conduct, and with great deference accorded counsel's decisions on review." *Wilborn*, 2011 IL App (1st) 092802, ¶79, quoting *People v. Fuller*, 205 Ill. 2d 308, 330-31 (2002).

¶ 20    To satisfy the second prong, a defendant must establish that, but for counsel's unprofessional errors, there is a reasonable probability that the trial outcome would have been different. *People v. Peeples*, 205 Ill. 2d 480, 513 (2002). A reasonable probability that the trial result would have differed is "a probability sufficient to undermine confidence in the outcome— or put another way, that counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair." *People v. Evans*, 209 Ill. 2d 194, 220 (2004).

¶ 21    Here, defendant's first claim of ineffective assistance of counsel is based on trial counsel's failure to introduce, and impeach Officer Hernandez with, the body camera audio. Defendant points out that Officer Hernandez claimed to have told defendant to "Stop, get on the ground." The audio from the body camera footage, which is contained in the record on appeal, confirms that

Officer Hernandez did not use those words, instead saying "Yo, get the f*** down mother f***,"

"Hey, I will f*** pop you. Get on the f*** ground, mother f***," and "Get your f*** a*** down."

Defendant claims that the discrepancy between Officer Hernandez's trial testimony and the audio

"raises questions about [Officer] Hernandez's credibility and veracity," and demonstrates his

"willingness to fudge certain details about his encounter with [defendant] in order to provide the

court with a clean and professional description of the chase and arrest."

¶ 22    As an initial matter, the State contends that this court should "decline defendant's invitation

to consider this issue for the first time on direct appeal where it would best be considered in a post-

conviction proceeding." The State asserts that the consideration of defense counsel's decision not

to impeach Officer Hernandez with the audio from his body camera video "depends upon the

contents of that audio recording." Because the audio of the body camera footage was not

introduced at trial, the State asserts that defendant's claim requires "consideration of matters

outside of the record," and accordingly, that it is "more appropriately addressed in proceedings on

a petition for post-conviction relief."

¶ 23    Although the body camera audio was not presented to the trial court during the trial, it is,

nonetheless, contained in the record on appeal, because the video exhibit in the record includes

audio. Accordingly, we will address the merits of defendant's argument.

¶ 24    As stated above, under the first prong of the *Strickland* test, *i.e.*, that counsel's performance

was deficient, a defendant must show that counsel's performance was objectively unreasonable

under prevailing professional norms (*Strickland*, 466 U.S. at 687; *People v. Domagala*, 2013 IL

113688, ¶ 36), overcoming the strong presumption that the challenged action may have been the

product of sound trial strategy (*People v. Manning*, 241 Ill. 2d 319, 327 (2011)).

¶ 25    Generally, decisions concerning whether and how to impeach witnesses and what evidence to present are strategic decisions that are virtually immune from ineffective assistance claims. *People v. Madej*, 177 Ill. 2d 116, 148-49 (1997); *People v. Pecoraro*, 175 Ill. 2d 294, 326 (1997). The only exception is where counsel's strategy is so unsound that counsel entirely fails to conduct any meaningful adversarial testing. *People v. Perry*, 224 Ill. 2d 312, 355-56 (2007). "The manner in which to cross-examine a particular witness involves the exercise of professional judgment, which is entitled to substantial deference from a reviewing court." *Pecoraro*, 175 Ill. 2d at 326-27. A defendant can prevail on an ineffectiveness claim only by showing that counsel's approach to cross-examination was objectively unreasonable. *Id*. Arguing that cross-examination "might have been handled differently" does not show that counsel's approach fell outside the wide range of reasonable professional assistance and, accordingly, is insufficient to satisfy the first prong of *Strickland*. *Id.* at 327.

¶ 26    Initially, we note that it is clear that trial counsel was aware of the existence of the audio component of the footage, as trial counsel asked Officer Hernandez the following questions during cross-examination: "Now Officer, there was *** audio with this video, is that correct?" and, "But we're not listening to it now, is that correct?" Accordingly, it does not appear that trial counsel's decision not to use the audio in cross-examining Officer Hernandez arose from a lack of diligence.

¶ 27    Although trial counsel never explicitly explained her reasoning for not playing the audio in the record on appeal, based on this court's observations of the body camera video and its accompanying audio, there is an obvious reason why counsel would make such a strategic choice. We note that the audio contains what sounds to be a person talking over the police radio. Although the voice is sometimes unintelligible over the other sounds of the pursuit, the voice states that there was a "person shot" and refers to "Roosevelt," the street on which Officer Hernandez initially saw,

and eventually apprehended, defendant. Later, as Officer Hernandez was apprehending defendant, the voice asks whether they are "looking for anybody else." Based on these observations, it would be reasonable for defense counsel to choose not to introduce the audio from the recording, lest it give the impression that defendant had been involved in another uncharged crime—a shooting in the same area where he was found. See *People v. Fillyaw*, 409 Ill. App. 3d 302, 314-15 (2011) (defense counsel has duty to prevent admission of prejudicial facts).

¶ 28 Rather than impeaching Officer Hernandez with the discrepancy in how he ordered defendant to stop, counsel's impeachment focused on the fact that the disposal of the gun could not be seen in the video, that the officer did not include many of his purported observations in the arrest report, and that other observations—particularly regarding the height of the fence—were contradicted by the video. This line of questioning was aimed at suggesting that Officer Hernandez misremembered the incident, and was mistaken about having seen defendant throw the gun. In these circumstances, counsel's approach did not fall outside the wide range of reasonable professional assistance, nor can we say that it was so unsound that she failed to conduct any meaningful adversarial testing. *Perry*, 224 Ill. 2d at 355-56. Accordingly, defendant has failed to satisfy the first prong of *Strickland*.

¶ 29 Moreover, even if were to assume that counsel performed deficiently, we also conclude that defendant's claim fails under *Strickland*'s second prong. As stated above, to satisfy the second prong, a defendant must establish that, but for counsel's unprofessional errors, there is a reasonable probability that the trial outcome would have been different. *Peeples*, 205 Ill. 2d at 513.

¶ 30 Here, the relevant inquiry for the trial court was whether defendant possessed the gun, and whether he did so lawfully. Officer Hernandez's choice of language, profanity-laden or otherwise, had no direct bearing on whether defendant lawfully possessed the gun. In these circumstances,

we do not believe that the discrepancy in the language used by Officer Hernandez to order defendant to stop would so undermine Officer Hernandez's credibility as to render the rest of his testimony unworthy of belief. Accordingly, had the audio been presented to the trial court, we find no reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

¶ 31    Defendant next contends that his trial counsel was ineffective for failing to impeach Officer Hernandez with evidence regarding the officer's disciplinary history. Defendant specifically contends that Officer Hernandez was "under investigation for job-related misconduct" and that he had "previously received a nine-day suspension for a 'criminal misconduct theft' incident from August 2016."

¶ 32    A criminal defendant has a fundamental, constitutional right to confront the witnesses against him, which includes a reasonable right of cross-examination to inquire into a witness's bias, interest, or motive to testify falsely. *People v. Nelson*, 235 Ill. 2d 386, 420–21 (2009). This can, in some circumstances, include evidence of prior misconduct by a police officer. See *People v. Phillips*, 95 Ill. App. 3d 1013, 1019 (1981). However, the evidence used to impeach must raise an inference that the witness has something to gain or lose by his testimony, and the evidence must not be remote or uncertain. *Nelson*, 235 Ill. 2d at 421, citing *People v. Coleman*, 206 Ill.2d 261, 278 (2002).

¶ 33    Before turning to the merits of this issue, we note that no evidence of Officer Hernandez's disciplinary history is contained in the record on appeal. Instead, defendant cites and attaches as exhibits to his appellate brief webpages published by the "Citizens Police Data Project" to substantiate the incidents of Officer Hernandez's alleged misconduct.

11

¶ 34 "Attachments to briefs not included in the record on appeal are not properly before the appellate court, and they cannot be used to supplement the record." *Wauconda Fire Protection District v. Stonewall Orchards, LLP,* 343 Ill. App. 3d 374, 377 (2003); see also *O'Brien v. Walker*, 49 Ill. App. 3d 940, 948 (1977) ("[A] reviewing court will not consider the question of whether error was committed in the trial court unless the oral or documentary evidence relied upon appears in the record."). Accordingly, we must disregard the attachments to defendant's brief concerning Officer Hernandez's disciplinary history.

¶ 35 In this case, a determination as to whether counsel's performance was deficient for failing to impeach Officer Hernandez with his disciplinary history, and whether counsel's deficient performance prejudiced defendant, necessarily requires consideration of the details of that history, and whether it would have been admissible. See *People v. Collins*, 2013 IL App (2d) 110915, ¶ 19 (in a prosecution for possession of a controlled substance with intent to deliver, the officer's disciplinary history was inadmissible where it was not related to the officer's "ability to conduct undercover drug transactions and did not raise an inference that he had anything to gain or lose by his testimony." The defendant's argument that the officer "would testify falsely to avoid any further discipline is unsupported speculation that is remote and uncertain.").

¶ 36 In this case, there is no evidence properly in the record that indicates that any disciplinary history existed at all, let alone that it raised an inference that Officer Hernandez had something to gain or lose by his testimony. Where the consideration of matters outside the record is required in order to adjudicate an issue presented for review, it is more appropriately addressed in proceedings on a petition for post-conviction relief. *People v. Kunze*, 193 Ill. App. 3d 708, 725-26 (1990). We therefore decline to adjudicate defendant's claim of ineffective assistance based on the failure of

counsel to impeach Officer Hernandez with evidence of his disciplinary history in this direct appeal. *Id.*

¶ 37    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 38    Affirmed.